IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

ALLSTATE VEHICLE AND PROPERTY       *
INSURANCE COMPANY,
                                    *
     Plaintiff,
                                    *
vs.                                            CASE NO. 4:23-cv-156
                                    *
SARAH COLEMAN ROGERS and DENNIS
C. THOMPSON, IV,                    *

     Defendants.                    *

_____

O R D E R

     This declaratory judgment action arises from a lawsuit filed

in a Georgia Superior Court by Sarah Coleman Rogers against

Defendant Dennis C. Thompson, IV.[1]  In that suit, Rogers alleges

that Thompson invaded her privacy and caused her severe emotional

distress by installing hidden cameras in bathrooms and filming her

undressed, without her knowledge or consent.  Plaintiff Allstate

Vehicle and Property Insurance Company asks this Court to declare

as a matter of law that it owes no duty to defend or indemnify

Thompson in the underlying tort suit.  Thompson, on the other hand,

moves for a judgment that Allstate is obligated to defend him and

that Allstate's request for a declaration on its duty to indemnify

_____

[1] Plaintiff Allstate labeled its operative pleading a "Petition" and
refers to itself as the "Petitioner" and the opposing parties as
"Respondents."  Because the Federal Declaratory Judgment Act, 28 U.S.C.
§ 2201, does not mandate deviating from the usual "Plaintiff/Defendant"
designations, the Court retains those designations in this Order.

should be dismissed as unripe.  As explained in the remainder of this Order, Allstate's motion for summary judgment (ECF No. 32) is granted to the extent that Allstate has no obligation to defend or indemnify Defendant Thompson for the incident allegedly occurring at his Sue Mack Drive residence.  Defendant's motion for summary judgment (ECF No. 33) is denied.  Allstate's claim seeking a declaration of no coverage as to incidents allegedly occurring at The Animal Farm restaurant is dismissed as having been abandoned.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

**I.    The Insurance Policy**

Plaintiff Allstate Vehicle and Property Insurance Company issued Defendant Dennis C. Thompson a homeowner's insurance policy covering his residence at 2822 Sue Mack Drive in Columbus, Georgia. The Policy provided Family Liability Protection coverage with limits of $300,000 per occurrence and Guest Medical Protection coverage with limits of $5,000 per person.  The Policy included the following insuring agreements:

Losses We Cover Under [Family Liability Protection]:

Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. . . .

Losses We Cover Under [Guest Medical Protection]:

**We** will pay the reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, ambulance, hospital, licensed nursing and funeral services, and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Pet. Ex. A, Policy 17, 19, ECF No. 1-1 at 35, 37.  The Policy defines "bodily injury" and "occurrence" as follows:

**Bodily injury** – means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:

a) any venereal disease;

b) herpes;

c) Acquired Immune Deficiency Syndrome (AIDS);

d) AIDS Related Complex (ARC);

e) Human Immunodeficiency Virus (HIV);

or any resulting symptom, effect, condition, disease, or illness related to a) through e) listed above. . . .

\* \* \*

**Occurrence** – means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage.**

*Id.* at 3, ECF No. 1-1 at 21. The Policy also contains the following intentional and criminal acts exclusion:

**We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person.** This exclusion applies even if:

a) such **insured person** lacks the mental capacity to govern his or her conduct;

b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

4

*Id.* at 17-18, ECF No. 1-1 at 35-36.[2]

## II.  State Criminal Proceedings

In 2022, Thompson was arrested after his business partner, with whom he co-owned a restaurant called The Animal Farm in Columbus, Georgia, contacted the Columbus police to alert them of potential criminal activity.  Following his arrest, Thompson was charged in Harris County Superior Court with two counts of invasion of privacy and two counts of photographing an individual's clothing and in Muscogee County Superior Court with thirty counts of unlawful surveillance and six counts of sexual exploitation of children.  Thompson maintains his innocence as to these charges, which remain pending.

## III. The Rogers Lawsuit

On December 14, 2022, Thompson's counsel forwarded a letter to Allstate from an attorney representing Sarah Coleman Rogers. The letter stated that Rogers was "secretly recorded in the bathroom" of Thompson's residence at Sue Mack Drive and that she "intend[ed] to seek damages pursuant to Georgia law against all responsible parties."  Pl.'s Mot. Summ. J. Ex. D, Rogers's Attorney Letter 1 (Oct. 18, 2022), ECF No. 32-6 at 8.  Several months later, on April 11, 2023, Rogers's attorney sent a second letter to

---

[2] Although the Court cites only the exclusion for Family Liability Protection coverage, the exclusion is identical in all material respects to that for Guest Medical Protection coverage.  *Id.* at 19, ECF No. 1-1 at 37.

Thompson, this time disclosing that Rogers was secretly recorded by Thompson in a bathroom at his father's residence in addition to the Sue Mack Drive home and demanded that Thompson pay Rogers $200,000 as a settlement for any claims she might bring against him.  The letter was forwarded to Allstate the same day along with a cover page specifying that the "Date of Incident(s)" was "June 2022."  Pl.'s Mot. Summ. J. Ex. E, Demand Letter, ECF No. 32-7 at 2.

On June 7, 2023, Rogers filed a lawsuit against Thompson in the Superior Court of Harris County, alleging claims for invasion of privacy, intrusion upon seclusion, and intentional infliction of emotional distress.  In Count I of her complaint, Rogers alleges that she spent the night at Thompson's Sue Mack Drive residence while working as his dog sitter, that she "disrobed and showered in the bathroom in which [Thompson] designated her to use," and that Thompson "installed hidden cameras in said bathroom and filmed [Rogers] undressed" without her knowledge or consent.  Pl.'s Mot. Summ. J. Ex. F, Rogers Compl. ¶¶ 8-11, ECF No. 32-8.  Rogers further alleges that when law enforcement informed her she was "secretly recorded" by Thompson, she endured "severe emotional distress, pain and anguish and still does so."  *Id.* ¶ 14.  Although the Complaint does not specify the amount of compensatory damages sought, it notes that Rogers "incurred approximately $300.00 in expenses" for counseling sessions and asserts a claim for punitive

damages.  *Id.* ¶¶ 15, 17.  Thompson denies Rogers's allegations, and her suit against him remains pending.

DISCUSSION

Allstate filed this action seeking a declaration that the Policy provides no coverage to Thompson for Rogers's claims arising from the incidents at Sue Mack Drive or any claims arising out of alleged incidents of illegal surveillance at The Animal Farm Restaurant.[3]  Currently before the Court are the parties' cross-motions for summary judgment.  In its motion, Allstate argues that it has no duty to defend or indemnify Thompson under the Policy. Thompson, on the other hand, seeks summary judgment in his favor, contending that (1) the Court lacks subject matter jurisdiction to hear this action, (2) Allstate's duty to indemnify is unripe, (3) the Court should abstain from exercising jurisdiction over this action, (4) Rogers's tort claims are covered by the Policy, and (5) Allstate cannot prevail on its claims involving The Animal Farm because it did not join that entity as a party.  The Court addresses each argument below.

## I.  Jurisdiction

Thompson makes several arguments regarding whether this action is justiciable, so the Court must address them at the

---

[3] Allstate also joined Rogers as a party to this suit and sought a declaration that it owed her no coverage under the Policy.  Rogers subsequently consented to an entry of judgment on Allstate's claims against her (ECF No. 13).

outset.  Specifically, Thompson argues that (1) this action fails for lack of subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy is not met and (2) the Court should decline to exercise jurisdiction over this action in light of the civil and criminal proceedings pending in state court.  The Court takes each argument in turn.

A.    Does the Court Have Subject Matter Jurisdiction?

"An action under the Declaratory Judgment Act, 'does not, of itself, confer jurisdiction upon the federal courts'; therefore, 'a suit brought under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question.'"  S*ellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1273 (11th Cir. 2020) (quoting *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989)).  Allstate brought this declaratory judgment action asserting jurisdiction under 28 U.S.C. § 1332.  Subject matter jurisdiction exists under that statute if the action (1) is between citizens of different states and (2) the amount in controversy exceeds $75,000, exclusive of interests and costs.  It is undisputed that diversity of citizenship exists.  Thompson contends, however, that the amount in controversy does not exceed $75,000 because Rogers's complaint does not specify the amount of damages she seeks.

"When a plaintiff seeks . . . declaratory relief, the amount in controversy is the monetary value of the object of the

litigation from the plaintiff's perspective." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (quoting *Cohen v. Off. Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000)). And when an insurer seeks a judgment declaring that its policy affords no coverage, that value includes the costs associated with defending an underlying action against the insured. *See Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976) ("The pecuniary value of the obligation to defend the separate lawsuit is properly considered in determining the existence of the jurisdictional amount.") (per curiam).[4]

Here, Allstate placed evidence in the record that it has incurred over $49,317.10 in connection with the defense of the Rogers suit since its inception in 2023 and anticipates further costs of $35,000-$50,000 if it is found to owe a duty to defend and the Rogers case proceeds to trial. Ferguson Decl. ¶ 3, ECF No. 39-1. As such, it is reasonable to deduce that the entire cost of defending that suit would exceed $75,000. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010) (noting that district courts are permitted to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" in determining the amount in controversy). The

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Court accordingly finds that the amount in controversy is met and will not dismiss this action for lack of diversity jurisdiction.

B.    Should the Court Exercise Jurisdiction over This Action?

Having determined that it has subject matter jurisdiction over Allstate's claims, the Court next must decide whether it will exercise that jurisdiction. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *see* 28 U.S.C. § 2201(a) (providing that "any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration.") (emphasis added).   Thompson argues that the Court should refuse to exercise jurisdiction over this action in light of the pending state civil and criminal proceedings against him.

In *Ameritas Variable Life Ins. Co. v. Roach*, the Eleventh Circuit provided a list of factors for district courts to consider when determining whether to exercise jurisdiction over a declaratory judgment action where another action is concurrently pending in state court:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

411 F.3d 1328, 1331 (11th Cir. 2005) (per curiam). The list is non-exhaustive, and no one factor is controlling. *Id.; see James River Ins. Co. v. Rich Bon Corp.*, 34 F.4th 1054, 1060 (11th Cir. 2022) (explaining that an inquiry under *Ameritas* functions as a "totality-of-the-circumstances analysis" in which a Court must "capture the breadth of the competing interests" and "properly balance them").

Pointing to factor one, Thompson argues that Georgia has an interest in deciding the issues in this declaratory judgment action because Rogers and Thompson are residents of Georgia and the civil and criminal proceedings brought against Thompson under Georgia law are pending in that state's courts.  Thompson further reasons that, under factor six, Allstate could refile its declaratory judgment action in a Georgia state court and request consolidation of it with Rogers's tort suit.  Invoking factors five and nine, Thompson also notes that Georgia courts have not ruled in a case factually analogous to the current action.

The Court finds that this action is a routine insurance coverage case and thus does not involve a novel and unresolved question of state law.  *Cf. Nat'l Tr. Ins. Co. v. S. Heating Cooling Inc.*, 12 F.4th 1278, 1289 (11th Cir. 2021) (affirming district court's decision to dismiss a declaratory judgment action where it involved "an unresolved issue" under the state's contract law of "whether carbon monoxide qualified as a pollutant").  As such, the Court concludes that Georgia's interest in entertaining this action is outweighed by the interest in achieving a prompt liability determination in the present forum.  "[A]llowing a declaratory action by an insurer to establish nonliability under casualty insurance was one of the prime purposes of the Declaratory Judgment Act," and insurers like Allstate "reasonably expect the federal courts to resolve run-of-the-mill disputes about their

duties to defend and indemnify against claims made in an underlying tort action." *Nautilus Ins. Co. v. Captain Pip's Holdings, LLC*, No. 24-12440, 2025 WL 2111805, at *2 (11th Cir. July 29, 2025) (per curiam) (quoting *James River*, 34 F.4th at 1062)(Brasher, J., concurring).  The Court further finds that it would be uneconomical to dismiss this action, especially where the parties have spent the last two years litigating the issue of Allstate's liability. *See James River*, 34 F.4th at 1058-1062 (noting the "valuable role" declaratory judgments play in "clarifying insurance companies' liability quickly and directly" and  instructing the district court on remand to consider "efficiency interests in the balance against [] federalism and comity interests").

As for factors two and three, a declaration in this action would settle the question regarding Allstate's duties to defend and indemnify Thompson in the underlying tort suit, thereby clarifying the legal relations between the parties.  And although Thompson contends in pointing to factors seven and eight that a state court would have better access to any facts which may develop in the ongoing civil and criminal proceedings, further factual development at this stage is irrelevant since, as discussed more fully below, "[a]n insurer's duty to defend" under Georgia law is determined by "comparing the allegations of the complaint with the provision of the policy." *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 941 (11th Cir. 2023) (quoting *Pilz v. Monticello*

*Ins. Co.*, 599 S.E.2d 220, 221 (Ga. Ct. App. 2004)).  Thus, the Court finds that the present circumstances do not justify a refusal to exercise jurisdiction in this action.[5]  Thompson's motion to dismiss on *Ameritas* grounds is accordingly denied.

## II.  Allstate's Claims

### A.  Duty to Defend

The parties do not dispute that this diversity action is governed by Georgia law.  In Georgia, "[a]n insurer's duty to defend is determined by 'comparing the allegations of the complaint with the provision of the policy.'"  *Cont'l Cas. Co.*,73 F.4th at 941 (quoting *Pilz*, 599 S.E.2d at 221).  "Thus, the issue is not whether the insured is actually liable to the plaintiff[] in the underlying action; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend." *Bituminous Cas. Corp. v. N. Ins. Co. of N.Y.*, 548 S.E.2d 495, 497 (Ga. Ct. App. 2001).  "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998).

---

[5] Thompson concedes that factor four, whether "the declaratory remedy is being used merely for the purpose of 'procedural fencing,'" is not at issue.  *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005) (per curiam).

The Policy provides that it covers "damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence."[6] Policy 17, ECF No. 1-1 at 35. "Bodily injury" is defined in the Policy as "physical harm to the body, including sickness or disease, and resulting death." *Id.* at 3, ECF No. 1-1 at 21. In Georgia, "bodily injury" as used in insurance contracts means "physical injury to the body." *Presidential Hotel v. Canal Ins. Co.*, 373 S.E.2d 671, 672 (Ga. Ct. App. 1988). Bodily injury "does not include non-physical, emotional or mental harm" and "cannot be equated with the broader term 'personal injury.'" *Id.* Therefore, Rogers's complaint must allege that she suffered some kind of physical injury to her person to trigger Allstate's duty to defend. Rogers's complaint, however, does not allege that Rogers suffered from any bodily injury but rather that she "endured severe emotional distress, pain and anguish." Rogers Compl. ¶ 14.

Thompson argues, first, that "[t]he Policy does not specify that actual physical injury or trauma is required to trigger [Allstate]'s duty to defend," and second, that "the type of conduct alleged" in Rogers's complaint "could result in 'sickness or disease' in a somatic or psychological form." Def.'s Mot. Summ. J.

---

[6] Neither party argues that Thompson's alleged actions at the Sue Mack Drive residence resulted in property damage.

7, ECF No. 33-1.[7]  Thompson's arguments effectively ask the Court to rewrite both the Policy and the Complaint.  "If a policy's language is unambiguous, the contract's plain terms must be enforced."  *Auto-Owners Ins. Co. v. Ovation Condo. Ass'n, Inc.*, No. 23-13111, 2024 WL 2723192, at *2 (11th Cir. May 28, 2024) (applying Georgia law).  Again, the Policy plainly states that it covers damages that Thompson "becomes legally obligated to pay *because of bodily injury* . . . arising from an occurrence," and the Policy defines "bodily injury" as "*physical harm* to the body." Policy 3, 17, ECF No. 1-1 at 21, 35 (emphasis added).  The Court may not "strain the construction of the policy" to makes its terms ambiguous when they are not.  *State Farm Mut. Auto. Ins. Co. v. Staton*, 685 S.E.2d 263, 266-67 (Ga. Ct. App. 2009).  As for the Complaint, Rogers does not allege that she suffered "sickness or disease" as a result of her emotional distress, and the Court may not redraft the Complaint to include any such allegation.  Thus, because Rogers has not alleged any physical injury to her person, the Policy provides no coverage for Allstate to defend the underlying tort suit.

---

[7] Thompson also argues that the Court should dismiss this action because Allstate did not include Rogers's complaint with its initial Petition. Allstate, however, attached the Complaint as an exhibit to its motion for summary judgment, and Thompson did not specify how he was prejudiced by this later inclusion of a complaint that was against him.  Thus, the Court will not dismiss this action on that basis.

Even if Rogers had alleged a bodily injury, that injury must "aris[e] from an 'occurrence.'"  Policy 17, ECF No. 1-1 at 35. The Policy defines "occurrence" as "an accident . . . resulting in bodily injury."  *Id.* at 3, ECF No. 1-1 at 21.  Although "accident" is not defined in the Policy, Georgia law defines that word as "an event which takes place without one's foresight or expectation or design."  O.C.G.A. § 1-3-3(2).  "The question of whether an event took place without one's foresight, expectation or design must be asked from the viewpoint of the insured."  *Rucker v. Columbia Nat. Ins. Co.*, 705 S.E.2d 270, 273-74 (Ga. Ct. App. 2010).  Thompson argues that Rogers's complaint does not allege any facts "showing intentional conduct by Thompson."  Def.'s Resp. to Pet. Mot. Summ. J. 16, ECF No. 36.  But Rogers alleges that she "disrobed and showered in the bathroom [Thompson] designated her to use," that Thompson "installed hidden cameras in said bathroom and filmed [Rogers] undressed," and that Thompson's conduct was "intentional."  Rogers Compl. ¶¶ 10-11, 18.  Rogers thus alleges that Thompson expected to film Rogers undressed because he intentionally placed a camera in a bathroom that he designated for her use.  *Cf. Rucker*, 705 S.E.2d at 273-74.  Therefore, even if Rogers had alleged a "bodily injury" under the Policy (which she did not), such injury does not arise from an "accident."

For similar reasons, coverage is excluded under the Policy's intentional and criminal acts exclusion.  That exclusion provides

17

that the Policy does not cover "any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." Policy 17, ECF No. 1-1 at 35. The exclusion applies "regardless of whether such insured person is actually charged with, or convicted of, a crime." *Id.* at 18, ECF No. 1-1 at 36.

Once again, Rogers alleges that Thompson filmed her undressed "[w]ithout her knowledge or consent." Rogers Complaint ¶¶ 10-11. Rogers alleges that Thompson's actions were "intentional." *Id.* ¶ 18. Rogers asserts claims against Thompson for invasion of privacy, intrusion upon seclusion, and intentional infliction of emotional distress. These alleged acts are clearly not accidental or negligent, and although Thompson argues that he has not been "convicted" for any of the conduct Rogers alleges, the Policy's plain terms provide that the exclusion applies "regardless of whether" Thompson is convicted of a crime. Def.'s Mot. Summ. J. 8, ECF No. 33-1; Policy 18, ECF No. 1-1 at 36; *see Cont'l Cas. Co.*, 73 F.4th at 941 (quoting *Fid. Nat'l Title Ins. Co. of N.Y. v. OHIC Ins. Co.*, 619 S.E.2d 704, 706 (Ga. Ct. App. 2005)) ("[A]n exclusion that is 'plain and unambiguous binds the parties to its terms and must be given effect.'"). Accordingly, Allstate is not obligated under the Policy to defend Thompson in the underlying

tort suit, and Allstate's motion for summary judgment on that claim is granted.[8]

B.    Duty to Indemnify

Thompson argues that Allstate's duty to indemnify claim should be dismissed as unripe, since "there are fact questions still to be developed" in Rogers's pending suit against him. Def.'s Reply to Pl.'s Mot. Summ. J. at 7, ECF No. 37; *see Tex. v. U.S.*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580-81 (1985)) (A "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"). Nevertheless, "[t]he duty to indemnify can, under some circumstances, be decided before the underlying case reaches judgment." *Snell v. United Specialty Ins. Co.*, 102 F.4th 1208, 1218 (11th Cir. 2024) (applying Alabama law). Such circumstances are present here, because Rogers's complaint "forecloses any duty to indemnify for the same reason[s] it forecloses any duty to defend": Rogers alleges that Thompson committed intentional torts, and she does not allege that those actions caused her bodily injury. *Id.* at 1219. Accordingly, the Policy imposes no duty on

---

[8] Having found that the Policy does not provide coverage because Rogers does not allege she suffered "bodily injury" which arose from an "occurrence" and because coverage is otherwise excluded under the Policy's intentional and criminal acts exclusion, the Court need not additionally consider Allstate's argument that Thompson failed to give proper notice under the Policy.

Allstate to indemnify Thompson in the underlying suit, and Allstate's motion for summary judgment on that claim is granted.

## III. Claim as to The Animal Farm Restaurant

Count V of Allstate's Petition requests a declaration that Allstate has no duty to provide coverage for any incidents of alleged illegal surveillance by Thompson which occurred at The Animal Farm restaurant. Pet. ¶¶ 43-49. Thompson argues that this claim must be dismissed for failure to join The Animal Farm as an indispensable party under Federal Rule of Civil Procedure 19. Because Allstate did not respond to Thompson's argument, Allstate's claim with respect to The Animal Farm is deemed abandoned. *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("[G]rounds alleged in the [petition] but not relied upon in summary judgment are deemed abandoned."). Accordingly, that claim is dismissed.

CONCLUSION

For the foregoing reasons, Allstate's motion for summary judgment (ECF No. 32) is granted as follows: The Court grants Allstate's request for a declaratory judgment that it has no duty to defend and no duty to indemnify Thompson in the underlying action brought by Rogers arising out of the alleged incident at Thompson's Sue Mack Drive residence. Thompson's motion for summary judgment (ECF No. 33) is denied. The Court dismisses Allstate's

claim for a declaration regarding alleged unlawful surveillance at The Animal Farm as abandoned.

IT IS SO ORDERED, this 13th day of January, 2026.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA